# Laura Newhall v. Central Vermont Hospital, Inc.

[349 A.2d 890]

No. 117-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed December 2, 1975

*David L. Cleary* of *Richard E. Davis Associates, Inc.,* Barre, for Plaintiff.

*Downs, Rachlin & Martin,* St. Johnsbury, for Defendant.

**Larrow, J.** Plaintiff, a lady of 63, entered the defendant hospital in November, 1969, complaining of bursitis in her right knee and general psoriasis. On her second day, the nursing staff failed to respond to her call light as they previously had, so that after waiting a "long time" for a bedpan, she attempted to go to the lavatory on her own, and fell, sustaining back injuries. She had previously received sedation which could have caused dizziness. Defendant appeals a jury verdict and resulting judgment of $30,594.00, claiming error in denying its motions for directed verdict and judgment n.o.v., and its motion to set aside the verdict as excessive and grant a new trial.

On the question of liability, the central theme of defendant's argument is that there was no expert testimony introduced to guide the jury as to the reasonableness or unreasonableness of the delay experienced in getting an answer to plaintiff's call light. This is, it says, a situation where the general rule is that expert evidence is required to establish a standard of care, and not within the recognized exception for negligence within the common knowledge and experience of a lay person. *Washington Hospital Center* v. *Butler,* 384 F.2d 331 (D.C. Cir. 1967); *Hornbeck* v. *Homeopathic Hospital Association,* 197 A.2d 461 (Del. 1964); *Kastler* v. *Iowa Methodist Hospital,* 193 N.W.2d 98 (Iowa 1971) ; Restatement (Second) of Torts § 283 (1965).

We perceive nothing technical or beyond the common knowledge of a lay person in the essential function of supplying a bedpan with reasonable expedition to a bedpatient in a hospital. Ministering to the fundamental needs of such a patient is, as plaintiff argues, essentially routine care, minis-

terial and not technical. It is well within the applicable rule requiring "such reasonable care as the patient's known (or should be known) condition may require or demand." Cf. *Kastler, supra,* and Restatement (Second) of Torts, *supra.* Here the evidence showed a patient relatively immobile, previously supplied with a bedpan, and under sedative medication. No special skill is required to supply a bedpan when needed; no special expertise is required to foresee the possibility of a fall resulting from the patient's attempt to supply the deficiency in care.

Although not cited by either party, we regard our decision in *Largess* v. *Tatem,* 130 Vt. 271, 291 A.2d 398 (1972), as controlling. There Mr. Justice Daley, speaking for a unanimous court, said (at pages 278–79):

> The defendant maintains that Vermont law requires that the care that is to be exercised by a physician in the treatment of a patient must be established by expert medical testimony and cites several cases supporting this rule of law. This Court finds no argument with that premise. However, for every rule of law, there must be a rational reason. It is obvious that the trier of fact must have sufficient technical and scientific testimony at his disposal provided by expert witnesses to answer a technical and scientific question of fact. But when a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert medical testimony is not required to establish that care.
>
> Under the circumstances of this case, the evidence presented to the trier of fact clearly indicated the failure of the defendant to inquire prior to making a judgment concerning the weight bearing of the plaintiff was a gross violation of the due care owed by a physician to a patient. This violation of that due care being so apparent to be comprehensible to the lay trier of fact, expert medical testimony is not needed to substantiate the violation which is already apparent. (Citations omitted.)

The defendant further argues that there was no evidence before the jury from which it could find that failure of

care on the part of the hospital operated as a proximate cause of plaintiff's fall. We disagree. The failure to provide a bedpan was a substantial factor, as a matter of common experience, in forcing the plaintiff to leave her bed. We cannot concur with plaintiff's argument that this was the only course of action left open to her, but it certainly was the course of action most reasonably to be expected from the average patient.

The appellant hospital further argues that there was no evidence from which a jury could find any shortage of care upon its part, because plaintiff did not establish that her call light was functioning properly or that the staff was, or should have been, in a position to see it. Implicit in this argument is the proposition that the plaintiff must establish, not only the failure of the hospital to furnish the appropriate care for which she contracted, but also the total absence of circumstances which might mitigate that failure. We are not persuaded that her burden is so heavy, especially when the pertinent proof, easy of access to the defendant and within its own peculiar knowledge, is much less available to the plaintiff.

It is undoubtedly true, as defendant claims, that there could arise sudden and unforeseen contingencies which might interfere with the prompt delivery to plaintiff of her contracted services. Sudden, non-negligent failure of the call light system could be one such contingency. Pressing emergency calling for the attention of the whole available staff, however unlikely, could be another. But it does not follow that plaintiff has the burden of negating these circumstances. If they did indeed exist at the time in question, the burden is upon the defendant to produce evidence to that effect, not on the plaintiff to negate it. Certain it is that the conduct of a hospital involves far greater risks than the operation of a grocery store, with respect to which we have relieved a plaintiff from "the burden of isolating a precise failure." In *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 395, 264 A.2d 796 (1970) we quoted with approval the following language from a New Jersey opinion by Chief Justice Weintraub:

> (W)e are satisfied that where a substantial risk of injury is implicit in the manner in which a business is

conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it is unjust to saddle the plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of facts that the fault probably was his.

With the risks here involved, and the obvious inability of the plaintiff to perceive what was occurring outside her own hospital room, we hold that her showing that there was unreasonable delay in answering her call for assistance made out a prima facie case, fairly tending to support her claim. If there did in fact exist some evidence of exigent circumstances, akin to those contemplated by the "sudden emergency" rule often applied in automobile negligence cases, the burden was on the defendant to show this, not on the plaintiff to negate it. The situation, if it did exist, was "peculiarly in the defendant's hands" and so is the burden of proof. To hold otherwise would be to cast upon plaintiffs in general an inordinate burden of disproving every possible exculpatory circumstance. This we are unwilling to do. Defendant's claim of error in this respect is not sustained.

Having in mind the case as a whole . . . a plaintiff's *prima facie* case need only be such that the jury, by drawing logical inferences from the evidence in the light of their own knowledge and experience, can reasonably reach the conclusion sought by the plaintiff, even though a contrary conclusion could logically be based upon the same evidence.

*Forcier* v. *Grand Union Stores, Inc., supra,* 128 Vt. at 398.

■ On the question of the damages awarded by the jury, defendant urges two possible solutions. It first claims the verdict to be excessive as a matter of law, requiring a new trial or alternative remittitur; it also claims it to be the result of passion and prejudice, requiring a total setting aside under *Smith* v. *Martin,* 93 Vt. 111, 106 A. 666 (1919).

We do not consider ourselves as within the "camp of ada-

mant expounders of nonreviewability" which defendant states the Second Circuit has left in *Dagnello* v. *Long Island R.R.*, 289 F.2d 797 (1961). We agree with that court that there is an upper limit, and that whether this has been surpassed is a question of law. But we are not convinced that the trial court abused its discretion, and thus permitted to stand a verdict which exceeded that upper limit. Defendant minimizes plaintiff's injuries, and indeed her out-of-pocket expenses were small and her loss of earnings was not charged to the jury. But there was credible testimony of much pain, the use of a cane, a back brace worn for two years and indicated to be required indefinitely, inability to do general housework and her work at Vermont State Hospital and a compression fracture of the second lumbar vertebra resulting from her fall. We cannot say that the award "shocks our conscience" or that it should, as a matter of law, have shocked the conscience of the trial court.

 Defendant's argument as to passion and prejudice would stretch that rule to its ultimate limits. Pointing to no aspect of the trial to sustain such a claim, it says that this is a type of case in which we should be more vigilant. It is, it says, a "target defendant" because "the plaintiff is an aged lady and the defendant is a hospital, an institution that, according to the popular media, is growing more impersonal all the time." The argument is unique, but insofar as it calls for a special set of rules governing the relationship of a hospital to its patients, an immunity total or partial from the ordinary rules of responsibility for negligence, it should be addressed to the legislative body. The accusation of impersonality, founded or unfounded, should have no bearing on our decision; we cannot take for granted that it influenced the jury.

*Judgment affirmed.*