2012 VT 86

# Sally J. Taylor v. Fletcher Allen Health Care

[60 A.3d 646]

No. 11-317

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 19, 2012

*Sally J. Taylor*, Pro Se, Colchester, Plaintiff-Appellant.

*Angela R. Clark* and *Nicole Andreson* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Plaintiff Sally J. Taylor sued Fletcher Allen Health Care (FAHC) for medical negligence and negligent infliction of emotional distress, in connection with her medical care following a surgery performed on her lumbar spine. After plaintiff failed to disclose any expert witness in response to discovery requests, FAHC moved for summary judgment, arguing that plaintiff's claims failed as a matter of law without an expert witness. The trial court granted FAHC's motion. We agree with the trial court that this case is sufficiently complex that plaintiff cannot prove her claims without expert testimony. Accordingly, we affirm.

¶ 2. Plaintiff presented to FAHC with "severe pain [and] severe disability" in her lower back and underwent surgery in which doctors fused part of her lower spine with internal hardware. During the first few days following the surgery, plaintiff made reasonable progress toward recovery. On the third day, however, a nurse was assisting plaintiff in moving to the bathroom when plaintiff alleges that the nurse "withdrew support and assistance . . . unexpectedly and without warning and caused [p]laintiff to fall violently on to the toilet." Following this incident, plaintiff experienced severe pain at the surgical site, and claimed that FAHC providers did not adequately address her pain complaints.

¶ 3. Due to her behavior at this time, plaintiff was referred for a psychiatric consultation, in which the psychiatrist noted that plaintiff complained of poor sleep and back pain. Her surgeon noted that plaintiff's alignment appeared to have changed, and suspected that one of the screws in her spine had perhaps loosened or even been pulled out. Accordingly, plaintiff underwent a second surgery, and the surgeon discovered that the hardware in her spine had loosened.

¶ 4. Following the successful second surgery, plaintiff filed suit. Unable to find an attorney to represent her, plaintiff proceeded with the suit pro se. In her complaint, plaintiff claimed that FAHC had been negligent in allowing her to fall onto the toilet, for "failing to recognize and diagnose the failure of the hardware" that had been installed during the first surgery, and for its treatment of plaintiff "in connection with her pain complaints following the fall." She also claimed that FAHC's negligence caused her to suffer severe emotional distress. FAHC answered the complaint and, in its discovery request, asked plaintiff to identify her expert witnesses. Plaintiff never responded. Following attempts by FAHC and the court to craft a discovery schedule, plaintiff eventually filed a proposed discovery schedule with May 1, 2011 as her deadline for expert disclosure. The court approved this discovery schedule.

¶ 5. Plaintiff did not comply with her May 1 deadline for expert disclosure. So, nearly eight months after suit was filed, FAHC moved for summary judgment, arguing that without expert testimony, plaintiff's claims failed as a matter of law. Plaintiff's opposition to the motion argued that she did not need expert testimony because her case fell within the "common sense exception rule." In essence, plaintiff argued that the alleged breach of medical care was so obvious that it may be understood by a layperson without the aid of expert testimony. She argued that "hiding and omitting major X-Ray results is all so straight forward and obvious that it may be understood by a lay person such as myself"; that "[t]o the lay person . . . there appears to be an ongoing cover up after the bathroom fall"; and that her claim of negligent infliction of emotional distress "is apparent even to a lay person, such as myself. I repeatedly beg, cry and plea for proper medical care as I state, 'there is something wrong with my spine after the fall.'"

¶ 6. In describing the events leading up to her fall onto the toilet, plaintiff wrote:

> I was taught a well place procedure technique and drill to use during bathroom toilet usage. I was told the importance of the nurse assisting me, and this was physical manual labor by the nurse. The nurse was to hold, lift and support me upon and off the toilet. The head nurse spent a lot of time with me and the drill

technique because of its great importance to safety. . . . Then another nurse came on duty and she neglected to use the procedure and because of her neglect I had a hard fall. The hospital had specific nursing management standards, guidelines and protocols which failed to be followed. The responsible nurse deviated from the accepted standard of nursing care.

In this description, plaintiff ascribed fault and cause to the hearsay statements of another nurse but offered no competent evidence sufficient to meet the requirements of expert disclosure or Vermont Rule of Civil Procedure 56. She further stated that "the gait belt device was not used during my hospital stay," suggesting that the "head nurse" did not use the device either. The trial court disagreed with plaintiff's position regarding the common sense exception rule, and granted FAHC's motion for summary judgment, ruling that "[w]ithout a medical expert, plaintiff cannot prove her case. The time for disclosure of experts having passed, [FAHC] is entitled to summary judgment."

¶ 7. On appeal, plaintiff raises essentially the same argument as in her opposition to the motion for summary judgment — that she should be permitted to proceed without an expert witness because her claims are so simple that they are easily understood by laypeople. She reasons that this case is a matter of common knowledge because anyone can understand her fall caused her back surgery failure. She also claimed some x-ray results were withheld from her and this intentional concealment caused her distress.

¶ 8. We review summary judgment rulings de novo, using the same standard as the trial court. *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177. Summary judgment is appropriate if, after reviewing the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," the movant "show[s] that there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." *Id.*; V.R.C.P. 56(c)(3).

¶ 9. We start by examining the "common sense exception" (also known as the "common knowledge rule") presented by plaintiff. While we have never formulated a rule with either of these exact names, other courts and academics have done so. See generally J. King, *The Common Knowledge Exception to the*

*Expert Testimony Requirement for Establishing the Standard of Care in Medical Malpractice*, 59 Ala. L. Rev. 51 (2007) (proposing reforms to the common knowledge rule). The reason for the general rule requiring expert testimony is that "[t]he human body and its treatment are extraordinarily complex subjects requiring a level of education, training and skill not generally within our common understanding." *Noyes v. Gagnon*, No. 2007-311, 2008 WL 2811231, at *2 (Vt. Feb. 6, 2008) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx. We have joined other jurisdictions by holding that while medical malpractice plaintiffs must generally use an expert witness to satisfy their burdens of proving the elements of medical negligence, an exception to the "general rule exists in cases where the violation of the standard of medical care is so apparent to be comprehensible to the lay trier of fact." *Senesac v. Assocs. in Obstetrics & Gynecology*, 141 Vt. 310, 313, 449 A.2d 900, 902 (1982) (quotation omitted).

¶ 10. The facts of the present case and the claims of fault and causation are sufficiently complex as to be beyond the scope of common knowledge to a layperson. Plaintiff's first claim of medical negligence is that the nurse should not have let her fall onto the toilet. Plaintiff argued in her opposition to FAHC's motion for summary judgment that the "acceptable proper standard of care that is taught in Vermont nursing schools in assisting a patient who is recovering from spinal fusion surgery to the bathroom involves the use of the gait belt device. This gait belt device was not used during [her] hospital stay." She included with her brief excerpts from what appear to be various nursing textbooks that explain how a nurse should use a gait belt or transfer belt to assist a patient in walking. The texts provide detailed instructions on how the belt attaches to a patient, and what to do if the patient falls. The court, presented with her unsupported statement that the proper standard of care required use of a gait belt, concluded that expert testimony was required to prove that theory.[1]

¶ 11. However, as plaintiff claims, neither the procedure taught by the head nurse nor the gait belt was used by the second nurse

---

[1] The failure to use the gait belt formed the basis of her claim that a layperson could understand that it was negligence not to use the device. It was not a mere "passing reference to a 'gait belt' " as suggested by the dissent. *Post*, ¶ 16. And, notwithstanding the fact that the dissent seems to know quite a bit about a gait belt, not everyone shares this knowledge.

during the trip to bathroom in which she fell. Reading further, the nursing text excerpt on which plaintiff relies states, "Several methods are used for assisting a client with ambulation," of which a gait belt is one such method. Whether a gait belt should have been used in this case or whether the use of a gait belt could have prevented her drop onto the toilet is beyond the ken of a layperson. There are countless variables that could explain the lack of a gait belt, and only testimony from an expert familiar with general nursing practices and the details of plaintiff's medical record would enable a jury to make an informed decision as to whether FAHC breached its duty of care by not using a gait belt in this case. We agree that any layperson could understand that a tumble onto a toilet seat could cause pain, and that an expert witness would not generally be required for a simple case in which a nurse or other health care attendant is alleged to have negligently dropped a patient. Our holding here is therefore limited to the unique facts of this case given the specificity of plaintiff's argument — that the nurse failed to use a specific tool and technique and that the drop was the cause of the need for the second surgery. Those claims are outside of the experience of typical layperson's understanding. Even if plaintiff could establish that the nurse negligently dropped her without relying on expert testimony, she could not, without an expert, argue to the jury that the hardware loosened as a result of the fall, or that her ongoing back pain and the need for a second surgery or any of the subsequent medical treatments were the result of the fall.

¶ 12. Plaintiff next makes two related complaints that FAHC was negligent for "failing to recognize and diagnose the failure of the hardware installed" during the first surgery and in "its treatment of [p]laintiff in connection with her pain complaints following [her] fall." She claimed that a "CT examination revealed displaced fractures of the transverse process on [her] L3, L4 and L5 vertebrae which had not been present prior to [her] fall." Implicit in these allegations is a correlation between her fall and the fact that a second surgery revealed a hardware failure — specifically, a loosened screw. Indeed, she alleges that FAHC ignored her complaints and attributed her pain to a "myriad of causes unrelated to her fall." In a claim of medical negligence, a "plaintiff has the burden of proving the applicable standard of care, that defendant breached that standard, and that as a proximate result plaintiff suffered injuries that would not other-

wise have occurred." *Jones v. Block*, 171 Vt. 569, 569, 762 A.2d 846, 848 (2000) (mem.). Proving proximate causation in medical negligence cases is notoriously difficult. See *Bender v. Dingwerth*, 425 F.2d 378, 381 (5th Cir. 1970) ("The plaintiff's difficulty in [proving medical negligence] cases . . . is . . . the failure to prove that there was any causal relationship at all between the doctor's act and the ensuing injury."). It is precisely for this reason that we generally require expert testimony. See *Clayton v. Unsworth*, 2010 VT 84, ¶ 17, 188 Vt. 432, 8 A.3d 1066 (expert testimony required to show conduct was proximate cause of harm in professional malpractice case).

¶ 13. In this case, plaintiff's medical history prior to the surgeries currently at issue sheds some light on why she needs expert testimony to prove causation. She has degenerative lumbar scoliosis and had had at least two other surgeries before the two at issue here. While the medical records following her second surgery in this case show that there had, indeed, been a hardware failure, the reports do not explain how or why this failure occurred. While it is possible that the failure of the apparatus was a direct and proximate result of plaintiff's fall, there is no way for a jury to intelligently evaluate the evidence without expert testimony. "Although there is an understandable tendency to conclude that an undesired result following a surgical procedure necessarily implies negligent conduct, that is not the reality or the law." *Noyes*, 2008 WL 2811231, at *2. As explained above, plaintiff cannot prove medical negligence, or the causal link to her injuries, without expert testimony. Accordingly, plaintiff cannot make a prima facie case for medical negligence, and FAHC is entitled to summary judgment as a matter of law.

¶ 14. In the interest of addressing all of plaintiff's claims, we note that she repeatedly states in her appellate brief that FAHC withheld crucial medical information in an attempt to cover up her fall. She argues that FAHC did not disclose to her the true findings of CT scans and x-rays. She presents these claims as part of her case for medical negligence. However, nothing in her complaint mentioned an attempt to cover up the accident or withhold information. Normally issues not raised at the trial court cannot be raised on appeal. *State v. Rideout*, 2007 VT 59A, ¶ 19, 182 Vt. 113, 933 A.2d 706 ("As a general rule, we will not consider issues that were not raised with specificity and clarity at trial.").

Even giving plaintiff the leeway that we generally accord to pro se litigants, see *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219, 19 A.3d 112, plaintiff's claims for medical negligence fail. The alleged withholding of information and cover up are but one brick in the wall that plaintiff must build to prove negligence. However, her claim of medical negligence ultimately fails because she could not provide an expert to explain causation. Any alleged cover up would not change this fact.

■ ■ ■ ¶ 15. Finally, plaintiff's second claim in her complaint was for negligent infliction of emotional distress. She asserted that FAHC's medical negligence caused her to suffer severe emotional distress. However, a claim of negligent infliction of emotional distress is premised on a finding of negligence. See *Lenoci v. Leonard*, 2011 VT 47, ¶ 9, 189 Vt. 641, 21 A.3d 694 (mem.) ("[T]o maintain either her wrongful death or negligent-infliction-of-emotional-distress claim — both of which sound in negligence — plaintiff must establish [a duty of care]."). As explained above, plaintiff cannot make a prima facie case for negligence; her claim for negligent infliction of emotional distress necessarily fails too.

*Affirmed.*

¶ 16. **Dooley, J.,** concurring and dissenting. I concur in the dismissal of plaintiff's claims that FAHC was negligent in its failure to recognize and diagnose the problems with the hardware and in its treatment of the pain complaints as well as her claim for negligent infliction of emotional distress. I do not concur with the dismissal of the claim that FAHC was negligent when plaintiff fell while attended by a nurse. The majority transforms a routine hospital-fall case into a complex medical-malpractice action requiring expert evidence on the strength of a pro se litigant's passing reference to a "gait belt." The essential issue, however, is simply whether plaintiff fell because she was inadequately attended to by a hospital nurse. The case requires no sophisticated technical or medical judgments beyond the experience of the ordinary layperson. I therefore respectfully dissent.

¶ 17. Plaintiff's complaint alleged that, about a week after her spinal surgery, she "was being assisted to the bathroom by a nurse . . . when said nurse withdrew support and assistance to Plaintiff unexpectedly and without warning and caused Plaintiff to fall violently on the toilet." The fall allegedly caused plaintiff severe pain and emotional distress, further damaged her spine,

loosened the screw from the original surgery, and required a second surgery to correct the damage. The hospital moved for summary judgment, asserting — among other arguments — that plaintiff had failed to present expert evidence establishing "the proper standard of care" for assisting a recovering surgical patient to the bathroom. Plaintiff filed a pro se opposition, claiming that the case fell within "the common sense exception" to the general rule requiring expert evidence in medical malpractice actions. The trial court granted the hospital's motion in a two-line entry order stating that plaintiff could not prove her case "[w]ithout a medical expert."

¶ 18. In affirming the judgment, the majority acknowledges the " 'common sense exception' " to the general rule that medical malpractice plaintiffs must use an expert witness to prove medical negligence. *Ante,* ¶ 9. While not cited by the majority, there is — in fact — ample authority to support the conclusion that a case where a nurse drops a patient fits into this exception. See, e.g., *Massey v. Mercy Med. Ctr. Redding,* 103 Cal. Rptr. 3d 209, 215 (Ct. App. 2009) (holding that, where post-operative patient fell while under nurse's supervision, expert testimony on standard of care was not required since "common knowledge and experience can be used to determine whether the patient fell because she . . . was insufficiently attended to by medical personnel"); *Davis v. Montgomery Cnty. Mem'l Hosp.,* No. 05-0865, 2006 WL 1896217, at *1, *4 (Iowa Ct. App. July 12, 2006) (rejecting hospital's claim that "the process of transferring a skilled-care patient from a bed to the bathroom required expert testimony on the standard of care involved" because it involved "nonmedical and routine" procedure within common knowledge of jurors); *Dimora v. Cleveland Clinic Found.,* 683 N.E.2d 1175, 1180 (Ohio Ct. App. 1996) (holding that patient who fell while being assisted by nurse fit within "common-knowledge exception" and patient was not required to produce expert testimony to establish professional standard of care); *McGraw v. St. Joseph's Hosp.,* 488 S.E.2d 389, 395-96 (W. Va. 1997) (holding that patient who fell while nurses were attempting to assist him back to bed raised issue involving "routine hospital care" that did not require expert medical evidence to establish standard of care); *Cramer v. Theda Clark Mem'l Hosp.,* 172 N.W.2d 427, 428-29 (Wis. 1969) (holding that patient's fall involved "custodial or routine hospital care" that was not so "complex or technical" as to require expert testimony on

standard of care). This Court has similarly recognized a "common knowledge" exception to the normal expert-testimony requirement in malpractice cases involving "routine care, ministerial and not technical" where, for example, a hospital patient whose call-light went unanswered fell while trying to go to the bathroom on her own. *Newhall v. Cent. Vt. Hosp., Inc.*, 133 Vt. 572, 573-74, 349 A.2d 890, 892 (1975).

¶ 19. The majority concludes, however, that the instant case is distinguishable because plaintiff, in her pro se opposition to the motion for summary judgment, claimed that the proper standard of care for assisting patients recovering from spinal surgery was to use a "gait belt" device, which was not done in her case, and to use a procedure specified by a head nurse, who had assisted her prior to the incident. She also attached a page containing two short paragraphs purporting to be from nursing manuals that refer to the use of a "gait belt" and a "transfer belt" for assisting a patient with ambulation. From this the majority concludes that the case is too "complex" for a layperson to judge, as only an expert would enable a jury to properly determine whether the nurse breached her duty of care by not using the device. *Ante*, ¶¶ 10-11. It adds that plaintiff cannot rely on the hearsay statements of the first nurse to supply the expert evidence.

¶ 20. I doubt that the reference to the gait belt turns this case into one of complex, multivariate analysis that only an expert can perform. After all, a gait or transfer belt is a simple strap that is placed around the waist to help move a person from one place to another. It can be purchased inexpensively in almost any well-stocked retail pharmacy or online for home use. Nurses are undoubtedly better trained in their use than laypersons, and nursing manuals undoubtedly recommend them. But this does not make their use so complex to require an expert witness.

¶ 21. My main point here, however, is different. Under the majority's analysis, plaintiff's claim would survive if she never mentioned the gait belt or the head nurse, but fails because she did. I disagree. While she suggested that the use of the gait belt may have prevented the fall, and she would not have fallen if the procedure developed by the first nurse had been followed, her claim remained that the second nurse was negligent in allowing

the fall to occur. As the cases from other jurisdictions hold, this is a claim that can and should be resolved by the jury.[2]

¶ 22. I agree with the majority that expert evidence was required to determine whether plaintiff's fall caused further damage to her spine or loosened the surgically placed screw, as she alleged. Plaintiff also sued, however, for the severe pain and emotional distress that resulted from the fall, and this did not require expert evidence. See *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 247-49, 668 A.2d 659, 667-68 (1995) (noting that expert medical testimony on causation has not been required to support a finding that employee suffered disabling pain from workplace injury, and holding similarly that "[n]o expert testimony on causation was necessary" to support award for emotional distress from discrimination); see also *Williams v. Lucy Webb Hayes Nat'l Training Sch.*, 924 A.2d 1000, 1003 (D.C. 2007) (holding that plaintiff was not required to present expert medical testimony that her negligent transfer from hospital gurney after surgery caused intense pain during the period that followed, since the issue was not a "complex" one and "ordinary human knowledge" would permit jury to find that plaintiff would not have suffered pain except for the negligent transfer).

¶ 23. Accordingly, I would reverse the judgment and remand for further proceedings.

¶ 24. I am authorized to state that Justice Robinson joins this concurrence and dissent.

---

[2] Plaintiff neither identified nor relied on any medical experts, apart from the two brief statements in her opposition to the motion for summary judgment that purported to be excerpts from nursing manuals. Accordingly, the trial court would be fully entitled to exclude such evidence in the event that it was offered at trial.