10-1209-cv
E.D. v. Tuffarelli

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of February, two thousand eleven.

Present:
> JOHN M. WALKER, JR.,
> CHESTER J. STRAUB,
> ROBERT A. KATZMANN,
> > *Circuit Judges*.

_____

E.D. and A.D., infants, by their parent and natural guardian,
Victoria Demtchenko, VICTORIA DEMTCHENKO,
and ROBERT BYRD.

> *Plaintiffs-Appellants*,

> v.                                                              No. 10-1209-cv

DANIEL TUFFARELLI, a case worker employed by the New York
City Administration for Children's Services, ERIC SANFORD, a
supervisor employed by the New York City Administration
for Children's Services, RODNEY JACKSON, a supervisor employed
by the New York City Administration for Children's Services, and
the CITY OF NEW YORK,

> *Defendants-Appellees*.

_____

For Plaintiffs-Appellants:          PHILIP C. SEGAL, Segal & Greenberg LLP, New York,
                                    N.Y.

For Defendants-Appellees:           SUSAN PAULSON, Assistant Corporation Counsel
                                    (Francis F. Caputo and Toni Gantz, *on the brief*), *for*
                                    Michael A. Cardozo, Corporation Counsel of the City
                                    of New York, New York, N.Y.


Appeal from the United States District Court for the Southern District of New York
(Castel, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and

**DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants appeal from the December 3, 2009, judgment of the district court

granting the defendants' motion for summary judgment dismissing the complaint and denying the

plaintiffs' cross motion for partial summary judgment.  On appeal, they argue that the district

court erred in concluding that (1) no reasonable jury could have found that the defendants

violated the plaintiffs' constitutional rights when they removed E.D. and A.D. from their parents'

custody and (2) the doctrine of collateral estoppel did not apply to preclude Defendant-Appellant

Daniel Tuffarelli from re-litigating issues adjudicated in family court.  We assume the parties'

familiarity with the facts and procedural history of this case.

We review an award of summary judgment *de novo*, "resolving all ambiguities and

drawing all permissible factual inferences in favor of the party against whom summary judgment

is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation mark omitted).

"It has long been settled in this Circuit 'that a parent's interest in the custody of a child is a

constitutionally protected liberty interest subject to due process protection.'" *Wilkinson ex rel.*

2

*Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir. 1999) (internal alteration omitted) (quoting *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)).

"Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Id.* at 104 (internal quotation marks omitted). In general, parents cannot be deprived of custody of their children without a pre-deprivation court proceeding. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). However, in "emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental consent." *Id.* at 594 (internal quotation marks and citations omitted). "Emergency circumstances mean circumstances in which the child is immediately threatened with harm." *Id.* If "there is reasonable time consistent with the safety of the child to obtain a judicial order, the 'emergency' removal of a child is unwarranted." *Id.* at 596. We require defendants to offer "objectively reasonable" evidence that harm was imminent. *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003).

Tuffarelli and La-Toya Baird, a child protective specialist at the New York City Administration for Children's Services ("ACS"), arrived at Plaintiff-Appellant Victoria Demtchenko's apartment to investigate a report of suspected child abuse at approximately 6:00 p.m. on Friday, October 27, 2006. The parties do not dispute that there was no opportunity to seek judicial approval for removal at this hour. When Tuffarelli and Baird entered the apartment, they observed E.D., an autistic child, cooking over an open flame while undressed above the waist. A large kitchen knife was accessible to E.D., and the apartment was a "creative mess."

3

The plaintiffs concede that E.D. had fallen down the stairs and sustained a visible injury to his face. When Tuffarelli asked Demtchenko about E.D.'s injury, she responded that she had not taken E.D. to a doctor after the fall and that he had missed many days of school. Tuffarelli's observations and Demtchenko's statements regarding E.D.'s injury corroborated the report that ACS had received from E.D.'s teacher. *See Wilkinson*, 182 F.3d at 105-06 (reasoning that substantiation of credible report of abuse buttresses reasonableness of caseworkers' conclusion that emergency circumstances were present).

The plaintiffs respond that removal was improper because Tuffarelli "disregarded his supervisor's express instructions." Pls.' Br. 31. After Tuffarelli interviewed Demtchenko, he called his supervisor, Defendant-Appellant Eric Sanford, and "described the circumstances in the home." J.A. 187. Sanford did not "think there was sufficient information to justify a removal of the children . . . at that point." *Id.* at 191. He instructed Tuffarelli "to contact the police, . . . to go back into the apartment and assess the possible danger to the children in the home." *Id.* After his conversation with Tuffarelli, Sanford asked to speak with Baird, who was "more experienced" than Tuffarelli. *Id.* at 192. She "gave [Sanford] specifics and assured [him] that it certainly seemed to her to be a removal situation." *Id.* at 193. Two police officers thereafter escorted Tuffarelli and Baird back to the apartment. Tuffarelli called Sanford a second time and reported that "it looked like, continued to look like, a removal situation." *Id.* at 633 (internal quotation marks omitted). Sanford then instructed Tuffarelli to call Sanford's supervisor, Defendant-Appellant Rodney Jackson, to obtain authorization to remove the children.

The plaintiffs are correct that Tuffarelli disregarded Sanford's instructions to further investigate. And, as the defendants concede, Tuffarelli did not advise Jackson of Sanford's

4

concern that there was not "sufficient information to justify a removal." *Id.* at 191. Tuffarelli likewise did not disclose to Jackson that he had failed to perform, at Sanford's direction, any further assessment of "the possible danger to the children." *Id.* A better practice would be to ensure that an ACS supervisor, in determining whether to authorize removal, receive a complete and accurate account of all relevant communications within the organization. The defendants did not follow that practice in this case.

Nevertheless, the plaintiffs overlook Jackson's independent determination that removal of the children was necessary. There is no genuine dispute that Demtchenko kept E.D., an autistic child, out of school and did not take him to a doctor after he had fallen down a flight of stairs and sustained an injury to his face. Jackson authorized removal because the situation, in his view, "raised several red flags." J.A. 264. He was concerned that E.D. was suffering from internal injuries but could not communicate them because of his autism and found it "very troubling" that E.D. had not received any medical care. *Id.* According to Jackson, in the case of autistic and speech-impaired children, "professionals' reliance on physical observation of the child and his or her environment becomes key." *Id.* at 640. Upon our independent review of the record, we conclude that Jackson's authorization for removal in this case did not violate the plaintiffs' procedural due process rights because emergency circumstances existed warranting the children's removal.

The plaintiffs next argue that the doctrine of collateral estoppel should have barred Tuffarelli from re-litigating the family court's purported determination that "no [] emergency existed" when he removed E.D. and A.D. from the plaintiffs' custody. Pls.' Br. 42. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that

decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 n.16 (2005) (internal quotation marks omitted).

> Under New York law, the determination of whether collateral estoppel precludes relitigation of an issue requires the court to pursue two general lines of inquiry. Initially, the court must determine whether the issue sought to be litigated is identical to an issue necessarily decided in the prior action and decisive on the present action. Upon satisfaction of the issue identity requirement, inquiry turns toward whether the party to be bound had a full and fair opportunity to contest the determination now said to control.

*Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993) (internal citations omitted). "We review a district court's application of the doctrine of collateral estoppel *de novo*. . . ." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 93 (2d Cir. 2000). As an initial matter, the family court never found that emergency circumstances did not exist on October 27, 2006, when the defendants removed E.D. and A.D. from the plaintiffs' custody. In fact, it authorized temporary removal of the children on the ground that removal was "necessary to avoid imminent danger to the child[ren]'s life or health." J.A. 228-29. In "paroling" E.D. and A.D. to the plaintiffs' custody, the family court did not conclude that the defendants lacked a reasonable basis for removing the children upon their investigation of the plaintiffs' apartment. Instead, it determined that E.D. and A.D. could return to their parents' custody "under very close [] supervision" "during the pendency" of the family court's proceedings. *Id.* at 243. The plaintiffs therefore have not identified any issue raised on summary judgment that is "identical to an issue necessarily decided" in the family court action. *Conte*, 996 F.2d at 1400.

Moreover, the Appellate Division's reversal of the family court's finding of neglect would not be impaired by any ruling of this Court. *In re Am. Tobacco Co.*, 880 F.2d 1520, 1527

(2d Cir. 1989) ("Issues are considered identical if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first.") (internal quotation marks omitted) (applying New York law).  A decision that the defendants did not violate the plaintiffs' constitutional rights likewise would not "destroy or impair rights" established by the family court.  *Id.*  The plaintiffs' collateral estoppel argument therefore fails on this ground as well.

We have considered the plaintiffs' remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK