Filed 12/17/25

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-00222

| A. V. v. Vermont Department for Children and Families et al. |
|---|

## ORDER ON PENDING MOTIONS

Plaintiff A.V. has filed a thirteen-count complaint against defendants Vermont Department for Children and Families (DCF), Lund, and Copley Hospital arising from defendants' allegedly unlawful surveillance and monitoring of plaintiff during her pregnancy, which led DCF to obtain an emergency care order to take plaintiff's child into state custody before the child was born. Pending before the court are DCF's Motion to Dismiss (Motion 6), Lund's Motion to Dismiss (Motion 8), and Copley's Motion to Strike or for Judgment on the Pleadings (Motion 13). For the reasons set forth below, DCF's motion to dismiss is granted in part and denied in part, Lund's motion to dismiss is denied, and Copley's motion is denied.

### Background

The complaint alleges the following facts. In 2021, plaintiff became pregnant with her first child. Plaintiff thereafter reached out to Lund to have a confidential conversation about her pregnancy. Lund is a not-for-profit organization in South Burlington offering treatment, education, and adoption services.

Around the beginning of her third trimester, plaintiff became unable to remain in her apartment in Elmore and temporarily relocated to a homeless shelter in Middlebury called the Charter House. The Charter House's executive director reported concerns to DCF in January 2022 about plaintiff's mental health including that plaintiff was unaware she was having a baby. Plaintiff alleges these concerns were baseless.

DCF accepted the report for an "assessment" and assigned caseworker Jennifer Stone.[1] Under the guidance of her supervisor Karen Reynolds, Stone contacted plaintiff's case managers at Charter House, a counselor at Lund, and a social worker at Copley Hospital in Morrisville where plaintiff planned to deliver. Lund shared confidential information about plaintiff with Stone, and Copley disclosed information in plaintiff's medical records. These disclosures were made without plaintiff's knowledge or consent, or a

---

[1] *See generally In re S.C.-M.*, 2025 VT 48, ¶ 2 (discussing the statutory framework that governs DCF's assessments and investigations).

court order. Based on this and other information collected as part of the assessment process, DCF developed concerns for plaintiff's mental health.

Plaintiff eventually returned to Elmore from the Charter house. She determined that she wanted a natural childbirth.

On the morning of February 11, 2022, Copley informed DCF that plaintiff was at the hospital and in labor, but that plaintiff was declining to push and permitting only intermittent fetal monitoring. Copley continued to provide DCF updates about plaintiff's labor throughout the day.

While plaintiff was still in labor, the Lamoille County State's Attorney filed a petition alleging that plaintiff's unborn child was a child in need of supervision (CHINS) under 33 V.S.A. § 5102(3)(B), and an ex parte motion for an emergency care order with the Lamoille Family Division, seeking to transfer temporary custody of the child to DCF. The petition was accompanied by an affidavit from Stone, detailing DCF's "significant concerns regarding plaintiff's mental state, and her ability to provide safe care for an infant." The affidavit incorrectly stated that plaintiff's child had been born on February 11, 2022, when in fact plaintiff was still in labor. The affidavit included lengthy allegations concerning plaintiff's recent history as well as "historical concerns" relating to alleged abuse plaintiff suffered as a minor.

Neither DCF nor the State's Attorney had spoken to plaintiff before the request for an emergency care order was filed. The Lamoille Family Division granted the emergency acre order on February 11, 2022, and issued an order transferring custody of plaintiff' baby to DCF.

Meanwhile, plaintiff was still in labor at Copley and was unaware that the emergency care ord had been issued. She continued to insist on a natural childbirth notwithstanding Copley's recommendation that she undergo cesarean surgery. Copley reached out to the Department of Mental Health to discuss the potential of involuntary treatment for plaintiff but the department determined that pursuing that process was not appropriate under the circumstances.

DCF, acting through the Attorney General's Office, then filed an emergency motion in the Lamoille Civil Division for an ex parte injunction to prevent plaintiff from leaving Copley and requiring her to undergo surgery to deliver the baby. Following an emergency telephone hearing, the motion was dismissed as moot after it was determined that plaintiff had already consented to surgical intervention.

Plaintiff delivered a healthy baby girl, S.V., on February 12, 2022, following cesarian surgery. The child was immediately placed in DCF custody pursuant to the emergency care order that had been issued the previous day. Plaintiff was not allowed to have contact with her newborn child.

The CHINS petition for S.V. was litigated in the Family Division over the ensuing weeks and months. The Family Division issued orders on February 14 and July 29, 2022, continuing DCF custody. Parent-child contact was initially limited but gradually increased. The Family Division ordered reunification in the fall of 2022 pursuant to a conditional custody order with plaintiff, and DCF ultimately dismissed the petition that November.

Plaintiff alleges that defendants' conduct resulted in the unwarranted and unlawful separation of plaintiff from her newborn child and caused plaintiff extreme emotional distress.

Plaintiff further alleges that DCF's conduct in this case is part and parcel of a larger practice of DCF maintaining "a registry of pregnant Vermonters under surveillance known has the 'high-risk pregnancy docket' or 'high-risk pregnancy calendar.'" Compl. ¶ 107. According to the complaint, the women included on this list are deemed high-risk solely because DCF believes they will be unfit parents. DCF tracks the pregnancies of women included on this list and then "aggressively" investigates them to "justify its speculative concerns and eventual post-birth intervention." Compl. ¶ 110.

Plaintiff filed this complaint in January 2025, alleging thirteen causes of action against DCF, Lund, and Copley. DCF and Lund have moved to dismiss the claims against them, and Copley has moved to strike the claim against it pursuant to 12 V.S.A. § 1041, or in the alternative, for judgment on the pleadings. A hearing was held on the motions on September 2, 2025.

## Analysis

### 1. DCF's motion to dismiss

The complaint pleads eleven causes of action against DCF, all of which DCF has moved to dismiss for failure to state a claim under Rule 12(b)(6) or lack of jurisdiction under Rule 12(b)(1) of the Vermont Rules of Civil Procedure.

A complaint should be dismissed under Rule 12(b) "only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). In considering a motion to dismiss, the court construes alleged facts and draws all reasonable inferences from those alleged facts in favor of the non-moving party. *Id.* On a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings." *Vt. Hum. Rts. Comm'n v. Town of St. Johnsbury*, 2024 VT 71, ¶ 6. On a Rule 12(b)(6) motion, the court must determine "whether the bare allegations of the complaint are sufficient to state a claim," and in so doing, may consider documents relied on in the complaint and subject to judicial notice." *Sutton v. Purzycki*, 2022 VT 56, ¶ 20, 217 Vt. 326; *Birchwood Land. Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420.

DCF makes several arguments in support of dismissal: (a) the Civil Division lacks jurisdiction to consider plaintiff's claims, which seek to collaterally attack decisions made by the Family Division; (b) all of plaintiff's claims are precluded by the prior Family Division orders; (c) all of plaintiff's claims are barred by the State's sovereign immunity; (d) plaintiff lacks standing to challenge DCF's alleged "high risk" pregnancy calendar; and (e) plaintiff's claims fail on the merits. Each argument is addressed below.

### a. Exclusive Family Division jurisdiction

DCF argues that plaintiff's complaint is an "improper collateral attack" on decisions made by the Family Division and raises claims conferred to that court's exclusive jurisdiction. Plaintiff disagrees, noting that she is not seeking to vacate or overturn any Family Division order, but is rather seeking damages and injunctive relief for harm caused by DCF's allegedly unlawful acts and practices.

The respective jurisdictions of the Civil and Family Divisions are governed by Title 4 of the Vermont Statutes Annotated. The Civil Division has "original and exclusive jurisdiction of all original civil actions, except as otherwise provided" by Title 4, and "jurisdiction to hear and dispose of any other matter . . . that is not subject to the jurisdiction of another division." 4 V.S.A. § 31. The Family Division has "exclusive jurisdiction to hear and dispose" all proceedings filed pursuant to Chapter 53 of Title 33, including "all proceedings concerning a child who is or who is alleged to be . . . a child in need of care or supervision brought under the authority of the juvenile judicial proceedings chapters, except as otherwise provided in such chapters." 4 V.S.A. § 33(a)(8); 33 V.S.A. § 5103(a).

At this preliminary stage, the court cannot conclude that these jurisdictional statutes require *carte blanche* dismissal of plaintiff's claims against DCF.[2] Those claims, grounded in various constitutional and statutory provisions, broadly seek monetary relief for DCF's alleged interference with plaintiff's individual reproductive and medical rights, and injunctive relief related to DCF's alleged maintenance of a "high-risk" pregnancy calendar. The general relief plaintiff seeks has not been committed by statute to the exclusive jurisdiction to the Family Division. *Cf. Cameron v. Rollo*, 2014 VT 40, ¶¶ 12-14, 196 Vt. 346 (Family Division has exclusive jurisdiction over division of marital property following an annulment (citing 4 V.S.A. § 33(4)); *E.J.R. v. Young*, 162 Vt. 219, 225-26 (parent cannot circumvent Family Division custody order by filing for habeas relief in Civil Division); *In re D.G.R.*, No. 2003-376, 2004 WL 5582555 (Vt. 2004) (unpub. 3-justice entry order) (same); *St. Hilaire v. DeBlois*, 168 Vt. 445, 448-49 (1998) (concluding that the "relief sought by" plaintiff—recoupment of child support payments ordered by the Family

---

[2] As discussed below, however, the court concludes that the specific injunctive relief plaintiff seeks in Count 2 would intrude on the Family Court's exclusive jurisdiction.

Division—"represented a collateral attack on the underlying validity of the support order that should have been brought in the family court in the first instance, and, in any case, was barred as a matter of law and public policy").[3]

The court has jurisdiction to consider plaintiff's claims.

### b. Issue preclusion

DCF next argues that plaintiff's claims are barred by issue preclusion because those claims each rest on the basis that there was no factual or legal support for the Family Division orders that transferred custody of plaintiff's child to DCF.

"The doctrine of issue preclusion, also known as collateral estoppel, generally prohibits a party from "relitigating an issue that was decided in a previous action."" *Echeverria v. Town of Tunbridge*, 2024 VT 47, ¶ 13, 219 Vt. 585 (quoting *In re M.V.*, 2022 VT 31, ¶ 26, 216 Vt. 491)). A party is precluded from relitigating an issue if five elements are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Id.* (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265 (1990)). "In deciding whether issue preclusion is appropriate, we balance our desire not to deprive a litigant of an adequate day in court against a desire to prevent repetitious litigation of what is essentially the same dispute." *Id.* (quotation omitted).

DCF cannot meet the *Trepanier* elements because the February 11, February 14, and July 29 Family Division orders upon which DCF relies for preclusive effect were not final judgments. Those emergency and temporary orders were, as plaintiff correctly describes them, "designed to be short-term, stop-gap measures pending a CHINS or final disposition hearing." *See In re I.B.*, 2016 VT 70, ¶ 7, 202 Vt. 311. Plaintiff's claims against DCF accordingly are not barred by collateral estoppel.

---

[3] *In re DC*, 2012 VT 108, 193 Vt. 101, upon which DCF also relies, does not compel a different result. The Vermont Supreme Court in that case merely noted that the Family Division "[w]ithout question" possessed subject matter over a CHINS proceeding, even though the court may have erred in exercising that jurisdiction when it treated a post-disposition termination-of-parental rights hearing as if termination had been sought at initial disposition. *Id.*, ¶¶ 14-15.

### c. Sovereign immunity

DCF additionally argues that all of plaintiff's claims against DCF are barred by the State of Vermont's sovereign immunity.

The "States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the [United States] Constitution," *PennEast Pipeline Company, LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citation omitted), and was retained as part of the country's "original constitutional design." *Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019). This immunity was preserved to foreclose "private suits against nonconsenting States" because "[a] State is entitled to order the processes of its own governance, assigning to the political branches, rather than the courts, the responsibility for directing the payment of debts." *Alden v. Maine*, 527 U.S. 706, 752, 756 (1999).

But a State may be sued by a private party in "limited circumstances" if the State "consents to suit, although such consent must be 'unequivocally expressed.'" *See PennEast Pipeline Co.*, 141 S. Ct. at 2258. Any waiver of the State of Vermont's sovereign immunity generally "must be accomplished expressly by statute," *Jacobs v. State Teachers Ret. Sys. of Vt.*, 174 Vt. 404, 408 (2002), and must "be strictly construed, in terms of its scope, in favor of the sovereign." *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)); *see also Depot Square Pizzeria, LLC v. Dep't of Taxes*, 2017 VT 29, ¶ 11, 204 Vt. 536, 542, 169 A.3d 204 ("[W]aivers of sovereign immunity must be express and we construe waivers narrowly.").

The Vermont Supreme Court has held, however, that an express waiver is not required when a damages claim is based on an alleged violation of the Vermont Constitution. In *Zullo v. State*, the Court held that sovereign immunity "is not an absolute jurisdictional bar" to a state constitutional tort claim and that, even without an express waiver of immunity, such claims may proceed where the state constitutional provision is self-executing and the Legislature has failed to provide an alternative "meaningful remedy" for the alleged violation. *Zullo v. State*, 2019 VT 1, ¶¶ 28-33, 209 Vt. 298. By so holding, the Vermont Supreme Court in *Zullo* clarified the scope of the rights and remedies available under the Vermont Constitution that were retained as "part of the original [federal] constitutional design" upon Vermont achieving statehood and joining the federal union. *See Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. at 1496.

The State can thus waive its sovereign immunity in two ways: (i) expressly by statute; or (ii) under *Zullo*, by failing to provide an alternative meaningful remedy for an alleged violation of a self-executing state constitutional provision. Plaintiff alleges both types of waiver here.

### i.     Statutory waiver of sovereign immunity

Plaintiff argues that Counts 2, 5, and 6 of the complaint fall within a statutory waiver of sovereign immunity.

Count 2 alleges that DCF violated Vermont's Freedom of Choice Act, 18 V.S.A. §§ 9493-9498. That statute, in relevant part, provides that a "public entity" shall not, "in the regulation or provision of benefits, facilities, services, or information, deny or interfere with an individual's fundamental rights to choose or refuse contraception or sterilization or to choose to carry a pregnancy to term, to give birth to a child, or to obtain an abortion." 18 V.S.A. § 9494; *see also* 18 V.S.A. § 9496 (defining "public entity" to include state agencies). With respect to enforcement, the Act provides that an individual injured by a violation of the Act "shall have a private right of action in Superior Court against a public entity for injunctive relief arising from the violation," and that "[i]n addition to any injunctive relief awarded, the court may award costs and reasonable attorney's fees to an injured person who substantially prevails in an action brought under" the Act. 18 V.S.A. § 9498. The Act thus expressly waives the State's immunity to suits for injunctive relief and costs including attorney's fees. Plaintiff, however, has identified no waiver with respect to a claim for money damages. Accordingly, Count 2 is barred by the State's sovereign immunity to the extent plaintiff seeks damages in connection with that claim.

Count 5 alleges violations of the Vermont Fair Housing and Public Accommodations Act, 9 V.S.A §§ 4500-4508. That Act applies to, among others, "governmental entities" that operate a "place of public accommodation"—defined as "any . . . facility at which services, facilities, goods, privileges, advantages, benefits, or accommodations are offered to the general public"—and prohibits such entities from discriminating against an individual based on the individual's disability. 9 V.S.A. §§ 4501(1), (8), 4502(c). A person aggrieved by a violation of the Act "may bring an action for injunctive relief and compensatory and punitive damages and any other appropriate relief in the Superior Court." 9 V.S.A. § 4506(a). Given these provisions, the court concludes that the State has waived its sovereign immunity with respect to Count 5.

Count 6 alleges a common law tort of "wrongful use of a civil proceeding," otherwise known as malicious prosecution. Through the Vermont Tort Claims Act, 12 V.S.A. §§ 5601-5606, the State has enacted a "limited waiver" of its sovereign immunity and consented to be sued for certain "recognized causes of action, particularly for common law torts." *Kennery v. State*, 2011 VT 121, ¶ 26, 191 Vt. 44; *Johnson v. Agency of Transp.*, 2006 VT 37, ¶ 5, 180 Vt. 493. This waiver, however, does not cover "[a]ny claim based upon . . . the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a State agency or an employee of the State, whether or not the discretion involved is abused." 12 V.S.A. § 5601(e)(1). Count 6 is based on DCF's allegedly unlawful filing of an application for an emergency care order on February 11, 2022, to take custody of plaintiff's

child before the child was born. Plaintiff alleges that DCF both lacked the legal authority to file before the child was born and intentionally misrepresented to the court that the child had been born.

DCF argues Count 6 is barred by the discretionary function exception. Much of DCF's work is discretionary. Indeed, the "conduct of an assessment or an investigation falls directly within the discretionary function exception." *Stocker v. State*, 2021 VT 71, ¶30, 215 Vt. 432. This discretion extends to assessing and investigating complaints concerning an expecting parent's ability to provide appropriate care upon birth. The Vermont Supreme Court has repeatedly rejected arguments, like plaintiff's here, that DCF lacks any prenatal investigative authority. Indeed, it is "well-settled" that DCF may file a CHINS petition based "solely on pre-birth circumstances" and that DCF "need not wait for an infant to be actually harmed before seeking to have the child declared CHINS." *In re D.S.*, No. 2015-029, 2015 WL 3767188 (Vt. June 16, 2015) (unpub. 3-justice entry order); *see also In re N.H.*, 2005 VT 118, ¶ 6, 179 Vt. 537 ("Commencement of a CHINS proceeding prior to a child's birth does not necessarily deprive the family court of subject matter jurisdiction."). *Cf. In re M.M.*, 2015 VT 122, ¶ 35, 200 Vt. 540 ("Although a parent's prepartum conduct— like other past behavior, such as conduct toward a child's sibling—may be relevant insofar as it supports an inference that the child, once born, is at risk of neglect or abuse, the civil child-protection statutes are not designed to punish prepartum conduct." (Robinson, J., concurring in part and dissenting in part)). Plaintiff thus cannot bring a malicious prosecution claim against DCF based on its discretionary decision to seek an emergency care order from the Family Division based on plaintiff's pre-birth circumstances.

That the petition was filed shortly before the child was born does not change the analysis on the facts of this case. Although the ministerial act of correctly reporting to the Family Division whether S.V.'s birth had just occurred or was imminent is not protected by the discretionary function exception, *Stocker*, 2021 VT 71, ¶ 24 (noting that "the discretionary function exception . . . will not excuse the State from liability for . . . failure to use reasonable care when executing ministerial tasks in furtherance of a discretionary undertaking," this statement alone cannot give rise to a claim for malicious prosecution. The Vermont Supreme Court has repeatedly held that, to the extent the Family Division exceeds its jurisdiction by issuing a prenatal CHINS order, any such error is harmless when the court, as the Family Division did here, issues an order continuing DCF custody following birth. *In re D.S.*, No. 2015-029, 2015 WL 3767188, at *1 (collecting cases). As discussed below in connection with plaintiff's Article 11 claims, there is no alleged basis to conclude the emergency care order would not have issued on February 11 had the Family Division been correctly informed that S.V.'s birth was imminent as opposed to having just occurred. The emergency care order provided the requisite legal support for taking plaintiff's child into custody immediately upon birth. In sum, DCF's discretionary decisions in conducting its assessment and commencing a CHINS proceeding fall within the

discretionary function exception. The only nondiscretionary alleged conduct—incorrectly reporting that plaintiff's child was born hours before the birth—cannot support a malicious prosecution claim. *See, e.g.*, *Davis v. Vile*, 2003 WL 25746021, at \*2 (claim for malicious prosecution requires, among other things, that legal proceeding was instituted without probable cause) (unpub. 3-justice entry order).

### ii. Waiver of sovereign immunity under *Zullo*

Plaintiff relies on *Zullo* to avoid the State's sovereign immunity with respect to Counts 1, 3, 4, 8, 9, 10, and 11, all of which allege violations of different articles of chapter 1 of the Vermont Constitution. As noted above, *Zullo* implied a waiver of sovereign immunity for state constitutional tort claims where (i) the relevant constitutional provision is self-executing and (ii) where the Legislature has failed to provide a meaningful alternative remedy. *See Zullo*, 2019 VT 1, ¶ 33.

With respect to whether a particular provision is self-executing, *Zullo* further explains:

> [A] constitutional provision is self-executing if it provides sufficient direction by which the right at issue might be protected; whereas it is not self-executing if it merely states a general principle without establishing any basis on which that principle may be enforced. Thus, a self-executing provision should do more than express only general principles; it may describe the right in detail, including the means for its enjoyment and protection. Ordinarily a self-executing provision does not contain a directive to the legislature for further action.

*Id.*, ¶ 34 (quoting *Shields v. Gerhart*, 163 Vt. 219, 224 (1995)). Count 1 alleges a violation of Article 1; Counts 3, 4 and 8 allege violations of Article 11; Count 9 alleges a violation of Article 7; Count 10 alleges a violation of Article 4; and Count 11 alleges a violation of Article 22. The Vermont Supreme Court has already held that Article 1 is not self-executing but that Articles 4, 7, and 11 are self-executing. *Shields*, 163 Vt. at 224-26 (Article 1); *Nelson v. Town of St. Johnsbury Selectboard*, 2015 VT 5, ¶ 52, 198 Vt. 277 (Article 4); *In re Town Highway No. 20*, 2012 VT 17, ¶ 34, 191 Vt. 231 (Article 7); *Zullo*, 2019 VT 1, ¶ 35 (Article 11). This court is bound by that precedent. Count 1, which asserts a private claim for money damages against the State based on Article 1, accordingly must be dismissed.

Article 22 was added the state constitution in 2022 and provides "[t]hat an individual's right to personal reproductive autonomy is central to the liberty and dignity to determine one's own life course and shall not be denied or infringed unless justified by a compelling State interest achieved by the least restrictive means." Vt. Const. ch. I, art. 22. Whether Article 22 is self-executing appears to be a question of first impression. Applying the framework from *Zullo* and *Shields*, the court has little difficulty concluding the provision is self-executing. "It sets forth a single, specific right" of personal reproductive autonomy, requires that any government infringement of the right be subjected to a

familiar strict scrutiny standard, and does not require or direct implementing legislation to become effective. *Compare Shields*, 658 at 227 (holding that Article 13 is self-executing).

With respect to the second *Zullo* step, the court cannot conclude at this preliminary stage that the Legislature has provided a meaningful alternative remedy to a private damages claim for plaintiff's alleged violations of Article 7, 11, and 22 of the Vermont Constitution. DCF argues that the statutory framework for CHINS proceedings provides an adequate remedy, but the Vermont Supreme Court in *Zullo* rejected similar arguments when it concluded that none of the State's proffered alternative remedies—a federal damages action, injunctive relief, administrative remedies, or a suppression motion in a criminal prosecution—provided meaningful redress for the alleged article 11 violation in that case. *See* 2019 VT 1, ¶¶ 37-47. Although plaintiff ultimately succeed in having custody of her child returned to her through the CHINS proceeding, she now seeks monetary relief for claims that go significantly beyond what the family court was able to or did address. Counts 3, 4, 8, 9, 10, and 11 are not blocked by the State's sovereign immunity and may proceed under *Zullo*.

*    *    *

For the reasons discussed above, Counts 1 and 6 must be dismissed, and Count 2 is limited to a request for injunctive relief (as is Count 7, which only seeks injunctive relief pursuant to Rule 75 of the Vermont Rules of Civil Procedure). The remaining counts against DCF are not barred by the State's sovereign immunity.

### d. Plaintiff's standing to challenge DCF's alleged use of a "high-risk" pregnancy calendar.

Counts 7 through 11 of plaintiff's complaint seek monetary and injunctive relief related to DCF's alleged practice of maintaining a "high-risk" pregnancy calendar. DCF argues that, even if these claims are not otherwise barred, plaintiff lacks standing to raise them because she has not alleged that she was ever placed on a such a calendar.

In order for this court to have subject matter jurisdiction over plaintiff's claims, plaintiff must have standing to bring those claims. *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 11, 217 Vt. 450. To establish standing, plaintiff "must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." *Id.* (quotation omitted). Standing is gauged by the specific claims that a party presents. *In re Lake Bomoseen Ass'n*, 2025 VT 59, ¶ 19. Thus, in order to challenge DCF's alleged use of a "high-risk" pregnancy calendar, plaintiff must allege she was injured because of such use. Plaintiff has not done so.

The complaint alleges that DCF received a report in January 2022 from the executive director of the Charter House homeless shelter that plaintiff was living at the shelter, pregnant, and exhibiting signs of significant mental illness; that DCF opened an

assessment in response to the report pursuant to 33 V.S.A. § 4912; that DCF reached out to plaintiff's providers at Lund and Copley Hospital as part of its assessment; that DCF "instructed Copley staff" to keep DCF informed of the status of plaintiff's pregnancy; that staff at Copley in fact told DCF when plaintiff went into labor; and that DCF sought court intervention in response to the reports it was receiving from Copley during plaintiff's delivery. Compl. ¶¶ 37-60. The complaint thus alleges detailed facts showing how DCF became involved with plaintiff's pregnancy, the steps that DCF took during the pregnancy, and the steps that DCF took to seek custody of plaintiff's child. These allegations show that DCF undertook an individualized response to a report that plaintiff's mental health might pose a risk of harm to plaintiff's child during delivery and upon birth.

With respect to DCF's "high-risk" calendar, however, plaintiff merely alleges that the calendar exists, and that, "[u]pon information and belief," plaintiff was included on it and consequently monitored and surveilled. Compl. ¶ 120. Indeed, all of plaintiff's allegations regarding her placement on the calendar are noticeably vague and are qualified using the terms "upon information and belief" or "presumed." *See* Compl. ¶¶ 187, 242, 251. Such allegations fail to show that DCF's involvement in plaintiff's pregnancy was part of a larger pattern or practice related to a "high-risk" pregnancy calendar or that plaintiff suffered and concrete and particularized injury because of DCF's use of such calendar.[4] *See, e.g.*, *Diederich v. Cnty. of Rockland*, 999 F. Supp. 568, 573 (S.D.N.Y.) (plaintiff "failed to show the requisite link between the defendants' conduct and any injury" to himself where he offered "only speculative statements, based 'upon information and belief,'" *aff'd,* 166 F.3d 1200 (2d Cir. 1998). Absent such showing, plaintiff lacks standing to pursue Counts 7 through 11 of the complaint, and DCF's motion to dismiss those claims is granted.

### e. Failure to state a claim on the merits

DCF also argues that none of the remaining counts in plaintiff's complaint state a claim on the merits for which relief can be granted. The court will consider each of the remaining count in turn.

### i. Count 2 – Violation of the Freedom of Choice Act

Count 2 alleges that DCF violated Vermont's Freedom of Choice Act, 18 V.S.A. §§ 9493-9498, by "divesting [plaintiff] of legal control over the fetus she was carrying before birth," attempting "to force [plaintiff] to undergo unwelcomed fetal monitoring and participate in a vacuum assisted delivery and cesarian surgery against her express wishes," seeking "to compel [plaintiff's] compliance through a court-ordered injunction," using

---

[4] Although the Rules of Civil Procedure permit pleading by information and belief, *see* V.R.C.P. 11(b), a plaintiff must still allege specific "facts sufficient to establish his or her standing on the face of the complaint." *Paige v. State*, 2018 VT 136, ¶ 10, 209 Vt. 379.

plaintiff's "protected decisions about her birthing plan as grounds to immediately remove [plaintiff's child] from her care upon birth," and "continu[ing] to retain—for possible future use—information about [plaintiff's] protected medical decisions and her birthing plan." Compl. ¶¶ 142-46.

As noted above, the Freedom of Choice Act provides, in relevant part, that a "public entity" shall not, "in the regulation or provision of benefits, facilities, services, or information, deny or interfere with an individual's fundamental rights to choose or refuse contraception or sterilization or to choose to carry a pregnancy to term, to give birth to a child, or to obtain an abortion." 18 V.S.A. § 9494; *see also* 18 V.S.A. § 9496 (defining "public entity" to include state agencies). The Act's waiver of sovereign immunity only permits claims for injunctive relief. 18 V.S.A. § 9498.

The Legislature enacted these provisions to "safeguard . . . existing rights to access reproductive health services in Vermont," including "the fundamental right of every individual to choose or refuse contraception or sterilization" and "the fundamental right of every individual who becomes pregnant to choose to carry a pregnancy to term, to give birth to a child, or to have an abortion." 2019 No. 47 (2019), § 1; 18 V.S.A. § 9493.

DCF argues the Act does not apply to plaintiff's claims because the Act only prohibits the State from interfering with a mother's choice whether to have an abortion. Plaintiff counters that the Act's protection of the "fundamental right to "choose to carry a pregnancy to term" and "to give birth to a child" encompasses the choice of whether, when, and how to give birth, and that DCF is accordingly prohibited from interfering with those choices.

Although the court does not endorse DCF's cramped reading of the Freedom of Choice Act, plaintiff's argument goes too far. The Act was intended to safeguard "existing rights." Plaintiff seeks to establish a new right to exclude the State from any role in a pregnant person's birthing decisions, regardless of the risks involved to the fetus. DCF's broad mandate has historically been understood to include and at times require the agency to take preemptive efforts to ensure for the welfare of newborns. *See, e.g.*, 33 V.S.A. §§ 4901, 4903, 4911, 5101(a)(1); *In re D.S.*, No. 2015-029, 2015 WL 3767188, at *1; *In re N.H.*, 2005 VT 118, ¶ 6. Plaintiff's position would significantly curtail that mission.

Because the court rejects plaintiff's absolutist position that DCF lacked any authority to act before her child's birth, resolution of Count 2 would require the court to examine each of the specific steps DCF allegedly took during plaintiff's childbirth to determine whether those steps infringed plaintiff's fundamental right to give birth under the Freedom of Choice Act. And because only injunctive relief is available under the Act, the court would then have to determine whether DCF's conduct could be prospectively enjoined. This inquiry would hopelessly entangle the court in second-guessing the Family Division's emergency and temporary custody orders, and would risk handcuffing the

Division's authority to protect newborn children in future cases. In short, it would require this court to invade the Family Division's exclusive jurisdiction in CHINS cases. *See* 4 V.S.A. § 33(a)(8); 33 V.S.A. § 5103(a).

Finally, any claim under the Freedom of Choice Act is moot because the court can no longer grant effective relief. *See Lowell v. Dep't for Child. & Fams.*, 2024 VT 46, ¶ 15, 219 Vt. 563. Money damages are not available under the Act. And even if the court had jurisdiction to do so, DCF cannot retroactively be excluded from the birthing process years after plaintiff's child was born. Even if plaintiff becomes pregnant again, there is no "demonstrated probability" that she will be subject to the same series of events that triggered DCF's involvement in the birth of S.V. *See Doria v. Univ. of Vt.*, 145 Vt. 114, 118-19 (1991). Count 2 must be dismissed.

### ii. Counts 3 and 4 – Article 11 violations (unlawful search and seizure)

Counts 3 and 4 allege violations of Article 11 based on DCF's allegedly unlawful "search" of plaintiff's private medical information and "seizure" of plaintiff's body. Article 11 provides:

> That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

Vt. Const., ch. I, art. 11. To state a private right of action for damages under Article 11, a plaintiff must allege that "(1) the [state agent] violated Article 11; (2) there is no meaningful alternative remedy in the context of that particular case; and (3) the [agent] either knew or should have known that the officer was violating clearly established law or the officer acted in bad faith." *Zullo*, 2019 VT 1, ¶ 55, 209 Vt. 298.

With respect to Count 3, plaintiff alleges that DCF unlawfully obtained and searched plaintiff's confidential medical records without statutory authorization, before obtaining a court order, and without plaintiff's consent. DCF argues in response that a mandated reporter cannot refuse to make a report of child abuse or neglect on the grounds that making the report would violate a privilege or disclose confidential information, 33 V.S.A. § 4913(i), and that confidential medical information can be admitted in a CHINS proceeding if the patient puts that information at issue, *In re C.I.*, 144 Vt. 52, 58-59 (1990). Those arguments fail to address plaintiff's allegation that DCF affirmatively requested and obtained plaintiff's confidential medical information from Copley Hospital without authorization or consent, and that DCF did so before a CHINS petition had been filed. At the pleading stage, plaintiff has sufficiently alleged an Article 11 violation. As discussed

above, the now-closed CHINS proceeding does not provide an adequate alternative remedy for the alleged violation. Moreover, at the pleading stage, plaintiff has sufficiently alleged that DCF's conduct violated clearly established law. *See, e.g.*, Compl. ¶¶ 45-49, 154-60. Count 3 states a claim for relief under Article 11.

With respect to Count 4, plaintiff alleges that DCF committed an unlawful seizure in violation of Article 11 by obtaining, based on false information, an emergency care order transferring custody of plaintiff's unborn child to DCF and by moving for an injunction in the Civil Division to prohibit plaintiff from leaving the hospital.

The removal of a child from parental custody may constitute a "seizure" for constitutional purposes, although a court order satisfies the warrant requirement. *See E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010) (applying Fourth Amendment to U.S. Constitution), *aff'd sub nom. E.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011). In a criminal prosecution, a warrant obtained based on false or incorrect information in an officer's affidavit may later be determined invalid—and evidence obtained pursuant to the warrant excluded—but only if (i) the officer made the false statements intentionally, knowingly, or with reckless disregard for the truth; and (ii) the warrant would not have been granted had the false information been omitted. *See State v. Demers*, 167 Vt. 349, 354 (1997) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Transposing that test on the circumstances here, plaintiff has alleged that DCF knowingly misled the Family Division that plaintiff's child had already been born. Compl. ¶¶ 61-63. Plaintiff has not alleged, however, that the Family Division would not have granted the emergency care order absent that representation. Nor can she. Plaintiff argues the Family Division lacked authority to grant an emergency care order on February 11, before S.V. was born the following day, but plaintiff acknowledges that the Family Division issued subsequent orders continuing DCF custody on February 14 and July 29. Compl. ¶¶ 89-99. As the Vermont Supreme Court has repeatedly observed, to the extent commencing a pre-birth CHINS petition raises a jurisdictional concern, any such error is harmless when the Family Division, as here, issues a custody order promptly following the child's birth. *See In re D.S.*, No. 2015-029, 2015 WL 3767188, at *1 (citations omitted). Because there is no basis to conclude the Family Division would have denied the emergency care order on February 11 had it known S.V.'s birth was imminent as opposed to having just occurred, the court cannot conclude that DCF violated Article 11 by taking S.V. into custody pursuant to that emergency care order.

To the extent plaintiff alleges an Article violation based on DCF having moved for injunctive relief in the Civil Division, that claim fails because filing a civil motion is not a seizure.

Count 4 fails to state a claim for which relief can be granted.

### iii. Count 5 – Violation of the Vermont Fair Housing and Public Accommodations Act

DCF has not addressed the merits of this claim anywhere in its motion to dismiss briefing. Because the court has already concluded it has jurisdiction to consider this claim and the claim is not barred by the State's sovereign immunity, the motion to dismiss Count 5 is denied.

### 2. Lund's motion to dismiss

Plaintiff pleads a single cause of action against Lund based on Lund's allegedly unauthorized disclosure to DCF of plaintiff's confidential counseling and treatment information.

In *Lawson v. Halpern-Reiss*, the Vermont Supreme Court recognized a common-law private right of action for damages resulting from the unjustified disclosure to a third party of information obtained by medical personnel during treatment. 2019 VT 38, 210 Vt. 224.

To state a claim under *Lawson*, a plaintiff must allege that a health care provider owed plaintiff a duty of confidentiality, that the provider breached that duty by making an unauthorized disclosure, and that plaintiff was injured as result. The federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its implementing regulations "inform the standard of care and establish the framework for exceptions to medical care providers' duty of confidentiality" under *Lawson. Id.*, ¶ 19. *See also* 18 V.S.A. § 1881 (essentially codifying HIPAA's requirements into state law).

The complaint contains the following relevant allegations concerning Lund:

- Plaintiff "reached out to Lund to have a confidential conversation about her pregnancy." Compl. ¶ 38.

- DCF connected with a counselor at Lund and, at DCF's request, Lund "knowingly shared details of their confidential counseling conversation" with plaintiff. Compl. ¶¶ 44-45.

- "DCF's own licensing regulations require agencies, including Lund, to maintain client confidentiality." Compl. ¶ 114 (citing Licensing Regulations for Residential Treatment Programs § 202, Vt. Code of Rules 13 172 001).

- "Lund unlawfully disclosed confidential counseling and treatment information to DCF about [plaintiff] without her consent." Compl. ¶ 275.

- "Specifically, a Lund staff member spoke to DCF on February 9, 2022, and disclosed details of [plaintiff's] past family planning counseling sessions to DCF without authorization. The staff member further speculated about [plaintiff's] mental health." Compl. ¶ 276.

- "Additionally, she unlawfully disclosed to DCF confidential information concerning [plaintiff's] family planning choices, including her breastfeeding preferences." Compl. ¶ 277.

- "Lund staff disclosed this information willingly and voluntarily to DCF, and without [plaintiff's] consent. DCF did not provide a warrant, subpoena, or court order to compel these disclosures." Compl. ¶ 278.

Lund argues that plaintiff's *Lawson* claim fails because these allegations show that Lund never acted as plaintiff's health care provider or otherwise owed plaintiff a duty of confidentiality.

The court looks to HIPAA and its implementing regulations to determine whether Lund owed plaintiff a duty of confidentiality. *See Lawson*, 2019 VT 38, ¶ 19. HIPAA "generally prohibits a 'covered entity' from using or disclosing an individual's protected health information without the individual's prior written consent," and defines a "covered entity" as a "health care provider." *Bedard v. LeBlanc*, No. 5:20-CV-161, 2022 WL 22972442, at \*2 (D. Vt. Nov. 8, 2022) (quoting 45 C.F.R. §§ 164.502, 160.103). A "[h]ealth care provider means . . . [any] person or organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. § 160.103. "Health care means care, services, or supplies related to the health of an individual," and "includes, but is not limited to . . . [p]reventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body." *Id.* "Protected health information" means individually identifiable information "created or received by a health care provider" that "[r]elates to the past, present, or future physical or mental health of an individual" or "the provision of health care to an individual." *Id.*

The complaint, fairly read, alleges that plaintiff received counseling services from Lund related to her pregnancy (*i.e.*, Lund provided plaintiff health care), that plaintiff provided information to Lund concerning her individual family planning choices and breastfeeding preferences (*i.e.*, plaintiff provided Lund protected health information), and that Lund then disclosed that information to DCF, as well as observations about plaintiff's mental health, without plaintiff's prior written consent. Using the regulatory definitions quoted above as a framework for defining the standard of care, plaintiff has stated a claim under *Lawson*. Lund's motion to dismiss is therefore denied.

### 3. Copley's motion to strike or for judgment on the pleadings

Plaintiff also pleads a claim against Copley for the hospital's allegedly unlawful disclosure of plaintiff's medical records. Specifically, plaintiff alleges that Copley disclosed plaintiff's medical records verbally and by fax on February 8, 2022, and that Copley kept

DCF apprised of the details of plaintiff's medical treatment on February 11 and 12 when plaintiff was giving birth.

Copley has moved to strike plaintiff's claim under Vermont's anti-SLAPP statute and, alternatively, for judgment on the pleadings.[5]

Vermont's anti-SLAPP statute, codified at 12 V.S.A. § 1041, is designed to combat "strategic lawsuits against public participation." *See generally Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶¶ 29-52. As the Vermont Supreme Court has explained:

> The statute contains a two-step process. A defendant may move to strike a complaint in 'an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution.' If the defendant satisfies the threshold requirement, the court must grant the motion 'unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff.

*Cornelius v. The Chron., Inc.*, 2019 VT 4, ¶ 8, 209 Vt. 405 (quoting 12 V.S.A. § 1041(a), (e)(1)).

Because the statute attempts to balance two constitutional rights—"a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts"—the statute "should be construed as limited in scope" and "great caution should be exercised in its interpretation." *Felis*, 2015 VT 120, ¶ 41. To that end, a motion to strike must be denied if the movant cannot satisfy the "in connection with a public issue" requirement, "regardless of the type of activity" at issue. *Id.*, ¶ 52.

Drawing on California law, from which Vermont's anti-SLAPP statute was derived, the Vermont Supreme Court has explained:

> [S]peech or activity may concern a public issue or be of public interest if the subject of the statement or activity precipitating the claim was a person or entity in the public eye, the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants, or the statement or activity precipitating the claim involved a topic of widespread public interest.

*Polak v. Ramirez-Diaz*, 2025 VT 9, ¶ 26 (quotation omitted).

---

[5] The court finds good cause for Copley's late filing of the anti-SLAPP motion based on Copley's change in counsel and the novelty of plaintiff's claims.

Copley cannot satisfy the "in connection with a public issue" requirement. The details of plaintiff's pregnancy and related medical treatment are not a public issue. Plaintiff is not a public figure and was not in the public eye, during her pregnancy she had not done anything to attract public interest or garner news coverage, and Copley's disclosures to DCF were not part of some ongoing public controversy. *Id.*, ¶ 28. While the welfare of newborn children "are matters of public interest in an abstract sense," Copley's alleged disclosures concerning plaintiff's pregnancy and mental health concerned only plaintiff's ability to care for her own child; "there was no indication of a broader threat to the public." *See id.* Given *Felis*'s limiting construction of Vermont's anti-SLAPP statute, Copley's motion to strike must be denied. *Felis*, 2015 VT 120, ¶ 52.

The court accordingly turns to Copley's motion for judgment on the pleadings. In resolving a motion for judgment on the pleadings under Vermont Rule of Civil Procedure 12(c), the court must "assume all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are true and all contravening assertions in the movant's pleadings are false." *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 2022 VT 45, ¶ 17, 217 Vt. 195 (quotation omitted). The motion should only be granted if "the movant is entitled to judgment as a matter of law on the basis of the pleadings." *Id.* The standard is thus "an exacting one" and a motion should not be granted unless "the plaintiff's pleadings contain no allegations that if proven would permit recovery." *Id.*

Copley argues it is entitled to judgment on the pleadings because Copley is immune from liability under 33 V.S.A. § 4913(f)(1) and *Lawson* for the good-faith disclosures it made to DCF, and because plaintiff is estopped from now raising claims that could have been raised in the CHINS proceeding.

The court cannot conclude that Copley is entitled to judgment as a matter of law on plaintiff's claim. Specifically, the court cannot determine from the pleadings that Copley's alleged disclosures are immunized because they either constituted a "report" of child abuse or neglect within the meaning of Section 4913(f)(1), or that Copley has satisfied "the subjective good faith" standard set forth in *Lawson*, which is a fact-specific inquiry. *See Lawson*, 2019 VT 38, ¶¶ 32-39. Nor is plaintiff's claim against Copley precluded by the prior CHINS proceeding. That proceeding did not result in a final judgment, Copley was not party to hat proceeding, and the Family Division lacked jurisdiction to award damages. *In re Burns 12 Weston St. NOV*, 2022 VT 37, ¶ 13, 217 Vt. 96 ("Claim preclusion bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." (quotation omitted)).

Copley's motion is denied.

**Order**

DCF's motion to dismiss (Motion 6) is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to Counts 1, 2, 4, 6, 7, 8, 9, 10, and 11. The motion is denied with respect to Counts 3 and 5.

Lund's motion to dismiss (Motion 8) is DENIED.

Copley's special motion to strike, or in the alternative, for judgment on the pleadings (Motion 13) is DENIED.

The parties shall file a stipulated ADR/pretrial schedule, or their respective proposals, by January 7, 2026.

Electronically signed on: 12/17/2025 pursuant to V.R.E.F. 9(d)

_____

Benjamin D. Battles
Superior Court Judge